UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

    vs.                                                                                         8:25-CR-422
(MAD)

JAGMEET SINGH OBEROI,

                                  **Defendant.**

---

**APPEARANCES:**                                           **OF COUNSEL:**

**OFFICE OF THE UNITED**                 **DOUGLAS G.N. COLLYER, AUSA**
**STATES ATTORNEY**
14 Durkee Street - Room 340
Plattsburgh, New York 12901
Attorney for the Government

**OFFICE OF THE UNITED**                  **NICHOLAS C.E. WALTER, AUSA**
**STATES ATTORNEY**
445 Broadway
Room 218
Albany, New York 12207
Attorney for the Government

**LUIBRAND LAW FIRM, PLLC**            **KEVIN A. LUIBRAND, ESQ.**
950 New Loudon Road
Latham, New York 12110
Attorney for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

1

On October 22, 2025, Defendant Jagmeet Singh Oberoi was charged in a criminal indictment with one count of conspiracy to commit alien smuggling in violation of 8 U.S.C. § 1324(a)(1)(A)(i) and (a)(1)(A)(v)(I), and eight counts of alien smuggling in violation of 8 U.S.C. § 1342(a)(2)(B)(ii). *See* Dkt. No. 1. Presently before the Court is the Government's appeal of Magistrate Judge Daniel J. Stewart's Order releasing Defendant to the supervision of Pretrial Services pending trial, and the Government's related motion. *See* Dkt. Nos. 18, 24. Defendant opposes the motion. *See* Dkt. No. 25, 26. With permission from the Court, the Government replies. *See* Dkt. No. 29.

For the following reasons, the Order is reversed, and Defendant is remanded to the custody of the United States Marshal pending further proceedings.

## II. BACKGROUND

### A. Procedural History

The criminal indictment was filed against Defendant on October 22, 2025. *See* Dkt. No. 1. An arrest warrant was signed and issued by Magistrate Judge Gary L. Favro the same day. *See* Dkt. No. 3. According to a Pretrial Services Report drafted by the Probation Department in the Eastern District of New York, Defendant was arrested by the U.S. Department of Homeland Security – Homeland Security Investigations ("HSI") on December 4, 2025. *See* Dkt. No. 9.

Defendant first appeared in the U.S. District Court for the Eastern District of New York. The Minute Entry dated December 5, 2025, from Magistrate Judge James R. Cho states as follows:

> Arraignment as to Jagmeet Singh Oberoi (1) Count Complaint held on 12/5/2025, Attorney Appointment Hearing as to Jagmeet Singh

> Oberoi held on 12/5/2025, Initial Appearance in Rule 5(c)(3) Proceedings as to Jagmeet Singh Oberoi held on 12/5/2025. AUSA Rebecca Urquiola present. Defendant present with retained counsel Leo Shalit. Government agent sworn. Defendant arraigned on a removal complaint to the Northern District of New York. Defendant waived identity hearing. The government opposed bail for reasons stated on the record. Defense counsel proposed a bail application with 2 suretors. The court denied the bail application. Commitment order entered; the defendant will be removed in the custody of the U.S. Marshals. Rule 5F warnings given to the government.

*United States v. Oberoi*, No. 1:25-MJ-344, Minute Entry (E.D.N.Y.).

An arraignment was scheduled before Magistrate Judge Daniel J. Stewart in the Northern District of New York for January 7, 2026, at 2:00 P.M. *See* Dkt. No. 10. During the arraignment, Magistrate Judge Stewart inquired as to whether a judge in the Eastern District of New York held a detention hearing at the time of Defendant's arrest. *See* Text Minute Entry 01/07/2026. Defense counsel and the Government disagreed insofar as the Government believed a detention hearing had been held, and Defense counsel was unsure. *See id.* Magistrate Judge Stewart ordered the parties to look into the issue and notify the Court, and he scheduled a detention hearing for January 9, 2026. *See id.*

On January 8, 2026, counsel for both parties filed letters with the Court. *See* Dkt. Nos. 15, 16. Defense counsel stated that he contacted Defendant's attorney from the Eastern District of New York who stated there was no bail hearing at the time of Defendant's arrest, "and that he reserved on the record all Mr. Oberoi's rights to a bail hearing, but did make an application for release at that time so that the defendant could voluntarily go to court in the Northern District rather than remain incarcerated pending his first Northern District appearance." Dkt. No. 15.

3

The parties subsequently obtained the recording of Defendant's arraignment and provided it to Magistrate Judge Stewart and the Court.[1]  Magistrate Judge Cho heard arguments from counsel regarding bail.  The Government explained that Defendant had been arrested at La Guardia Airport after booking a flight on December 4, 2025, that was scheduled to leave within two hours from New York to Canada.  Based on that representation, Magistrate Judge Cho concluded Defendant was a risk of flight and remanded him to the custody of the United States Marshal.  At the conclusion of the appearance, Magistrate Judge Cho stated that "Defendant is free to renew his request for bail when he arrives in the NDNY."  Audio Tr. of Arr. at 10:37.

Magistrate Judge Stewart held a detention hearing on January 9, 2026.  Magistrate Judge Stewart heard arguments from both sides and ruled in Defendant's favor, finding that there was a set of conditions which could reasonably assure Defendant's appearance in Court and setting release conditions including a $10,000 Appearance Bond.  *See id.*  Magistrate Judge Stewart stayed Defendant's release, however, until Monday, January 12, 2026, for the Government to file its appeal of the release decision.  *See id.*  The Government filed its notice of appeal the same day.  *See* Dkt. No. 18.

Defendant's parents posted the $10,000 Appearance Bond the day of the detention hearing.  *See* Dkt. No. 19.  Magistrate Judge Stewart, therefore, issued an Order setting Defendant's conditions of release, releasing him to his parents, and placing him on electronic monitoring.  *See* Dkt. No. 20.  The Government moved to stay Defendant's release pending its filing of a

---

[1] Defense counsel transcribed portions of the recording into his brief.  *See* Dkt. No. 25 at 3.  The Court has listened to the recording and, although Defense counsel's transcription does not appear to be a perfect recitation of the statements made during the hearing, the sum and substance comports with what the Court heard.  *See id.*

revocation motion.  *See* Dkt. No. 21.  The Court granted the Government's request and set a briefing schedule.  *See* Dkt. No. 23.

### B.  Parties' Arguments

#### a.  *Government's Argument in Support of Detention*

The Government argues Defendant's release must be revoked because he is a risk of flight. *See* Dkt. No. 24.  The Government explains Defendant is a citizen of India, but a legal permanent resident of the United States.  *See id.* at 6.[2]  He immigrated to the United States in 2023 and lives in Queens, New York with his mother, father, sister, and brother.  *See id.*  The Government contends one family member is implicated in Defendant's "people-smuggling scheme."  *Id.* at 7. Defendant's wife lives in India and Defendant travels frequently between the United States and India.  *See id.*

According to the Government, "[o]n December 3, 2025, a New York Police Department officer serving as a Task Force Officer with Homeland Security Investigations called the defendant and arranged to meet with the defendant at his and his family's home in Queens at 7:30 a.m. the following day, December 4."  *Id.* at 8.  "The officer told the defendant that NYPD officers wanted to discuss a hit-and-run accident that the defendant had been a victim" in 2023. *Id.*  The Government states that Defendant was not home when officers arrived, but that they spoke to a family member who provided the name of a lawyer Defendant might have been hiring. *See id.* at 9.  Law enforcement agents contacted the lawyer and advised him that Defendant had a federal warrant out for his arrest.  *See id.*  The lawyer stated he did not handle federal matters and

---

[2] Citations are to the pagination generated by CM/ECF in the header of each page.

would put Defendant in touch with a federal lawyer. *See id.* When speaking with the federal attorney, law enforcement disclosed the existence of the warrant and stated a desire for Defendant to self-surrender. *See id.* "The federal lawyer said he would inform [D]efendant. Agents also gave the federal lawyer's details to the duty Assistant United States Attorney in the Eastern District. The AUSA spoke with that lawyer and asked if [D]efendant would self-surrender." *Id.* The Government states that "[t]he lawyer said he had not yet been able to reach the family of [D]efendant." *Id.*

An HSI Agent received a notification at 3:29 P.M., stating that Defendant booked a flight to leave La Guardia airport at 5:55 P.M. to Canada. *See id.* The Government avers Defendant's home is fifteen minutes away from the airport. *See id.* Defendant was arrested in the airport, where his mother, father, and brother were also located. *See id.* at 9-10. Defendant's family members did not have tickets for any flight. *See id.*

As to the criminal charges underlying this case, the Government explains that on August 29, 2024, around 2:45 A.M., U.S. Customs and Border Protection agents stopped a car near Champlain, New York,[3] that agents believed was smuggling undocumented individuals. *See id.* at 7. The individuals in the vehicle were in fact citizens of Indian, without status in the United States. *See id.* Based on conversations between agents and the individuals of the car, agents stopped two other vehicles near Ellenburg, New York,[4] which also carried undocumented individuals. *See id.* The Government explains that two of the arrestees were interviewed by law enforcement agents and they identified Defendant as someone involved with the scheme. *See id.*

---

[3] Champlain, New York is approximately twelve miles from the Canadian border.
[4] Ellenburg, New York is approximately fifteen miles from the Canadian border.

The Government contends the arrestees also named Defendant's family member as being involved in the scheme. *See id.* The information was corroborated by contents of the arrestees' phones. *See id.* The arrestees identified Defendant and the other family member in photo arrays. *See id.*

Agents then made another arrest on September 6, 2024, by stopping a vehicle in Churubusco, New York.[5] *See id.* The vehicle contained eight passengers who were all citizens of India and had recently crossed the Canadian border. *See id.* The driver of the vehicle was interviewed by the agents and identified Defendant and his family member as participants in the scheme. *See id.* at 7-8. The Government states the driver's statements were supported by information in his phone and his identification of Defendant and the other family member in a photo array. *See id.* at 8.

The Government states Defendant faces a five-year mandatory minimum prison term for the crimes charged. *See id.* at 15. The Government notes that "[t]he Second Circuit has noted that a 5-year mandatory minimum sentence may be a basis to detain a defendant. . . . So has this Court." *Id.* (citing *United States v. Blanco*, 570 Fed. Appx. 76, 77 (2d Cir. 2014); *United States v. Terrance*, 8:24-CR-456, 2025 WL 782340, at *7 (N.D.N.Y. Jan. 10, 2025)). The Government emphasizes that Defendant's wife lives is in India and that he faces deportation if he was convicted. *See id.*

The Government repeatedly stresses Defendant's act of booking a flight from La Guardia to Canada as evidence that he cannot be trusted to appear in Court. *See id.* The Government states Defendant did so "after learning about the arrest warrant." *Id.* The Government

---

[5] Churubusco, New York is approximately ten miles from the Canadian border.

emphasizes that it was the unindicted family member who answered the door when law enforcement went to Defendant's home and that the unindicted family member and other family members were at La Guardia with Defendant.  *See id.*

    The Government contends that although Defendant's passport has been seized by law enforcement, the Defendant could still flee, particularly in light of his alleged ability to aid individuals without passports to enter the country.  *See id.* at 16.  The Government also argues that the electronic monitoring and Appearance Bond are insufficient to ensure Defendant's appearance because he could cut off the monitor and the $10,000 bond "is small; the defendant himself stated that he has been saving money, and his family was able to retain counsel to contest the first detention hearing in New York."  *Id.* at 17.  The Government emphasizes the strong ties Defendant has to India as that is where his wife resides.  *See id.* at 18.  The Government also notes that Defendant has a sister residing in Canada.  *See id.*

    On February 5, 2026, the Court requested that the Government produce a copy of any evidence it relied on via proffer in its motion no later than February 9, 2026.  *See* Dkt. No. 28. The Government provided the Court with numerous documents and images the same day.[6] Specifically, the Government produced HSI's investigation reports from the arrests of the drivers near the northern border of the country, the reports from law enforcement agents' interviews with those drivers in which Defendant and a family member were identified as integral to the scheme, and the photo array lineups in which three different people identified Defendant.  The

---

[6] The Court will not make the evidence publicly available at this time as the Government's investigations appear to be ongoing.  The parties or a reviewing Court are directed to contact the Clerk of the Court should they require access to the documents or images proffered by the Government or relied upon by this Court.

Government also produced screenshots of text messages between the drivers and Defendant with map locations to places in New York, near the Canadian border.

### b. *Defendant's Argument in Support of Release*

Defendant argues that "[a]t no time was [he] told he was going to be arrested or that there were even *any* charges against him." Dkt. No. 25 at 4. Defendant states he chose not to engage with the NYPD about the 2023 car accident in which Defendant was the victim/complainant, which was "within his rights." *Id.* at 5.

Defendant also notes that the allegations in this case are just allegations and argues that the Government has not produced any documentary evidence supporting the charges. *See id.* at 6-7. As to the mandatory minimum term of imprisonment, Defendant argues that the eight counts for smuggling are tenuous, at best, because Defendant was not the person who brought or attempted to bring the undocumented individuals into the country. *See id.* at 7. As to the conspiracy charge, Defendant notes that there is no mandatory minimum term of imprisonment and a guideline range lower than five years. *See id.*

Defendant emphasizes that he has no criminal history, and his passport was confiscated. *See id.* at 8. Defendant also states that his sister lives in Calgary, Canada, where he was intending to fly to. *See id.* at 9. He also notes that, when arrested, he had $300 and two changes of clothes "indicating his trip was for a visit." *Id.* As to his family being at the airport, Defendant states that they drove him so Defendant would not have to park the car and the family could use the car while Defendant was gone. *See id.* at 8.

In his second response to the Court, Defendant provides screenshots of text messages from a contact labeled "D." Dkt. No. 26-2 at 2. The screenshot shows an incoming text message dated November 20, at 12:44 P.M., which states "Mr. Singh, this is Det adaszewski [sic] from the NYPD. I would like to speak with you about a complaint report you filed in 4/23/23. Thank you." *Id.* Another incoming text message, dated November 3, at 12:10 P.M., states "Mr Singh give me a call, thanks." *Id.* A third text message dated December 4, at 7:56 A.M., states "Mr Singh please give me a call, thanks. You said you would call me at 7:30." *Id.*

Defendant also provides a screenshot of an outgoing call made to "D" on November 20, 2025, at 1:46 P.M., which lasted one minute. *Id.* at 3. Another screenshot shows an incoming call dated December 3, 2025, at 7:40 P.M., which lasted one minute. *See id.* at 4.

Defendant also attached the Pretrial Services Report and the Police Accident Report from Defendant's 2023 car accident to his responses. *See* Dkt. Nos. 25-1, 25-2, 26-1, 26-3.

## II. DISCUSSION

### A. Standard of Review

Where, as here, a detention hearing is authorized, the Court must then consider whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community, applying the factors set forth in 18 U.S.C. § 3142(g). *See United States v. Berrios-Berrios*, 791 F.2d 246, 249 (2d Cir. 1986). If the Court finds that a condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community, the defendant must be released. If not, the defendant must be detained. *See* 18 U.S.C. § 3142(c). If a magistrate judge orders a defendant released on

conditions, the Government may file with the district court "a motion for revocation or amendment of the order," which must be "promptly determined." 18 U.S.C. § 3145(b). The district court then conducts a de novo review, *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985), in which it may rely on the record developed before the magistrate judge or accept additional evidence. *See United States v. Colombo*, 777 F.2d 96, 98 n.1 (2d Cir. 1985).

When detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crime charged, (2) the history and characteristics of the defendant, (3) the seriousness of the danger posed by the defendant's release, and (4) the weight of the evidence against the defendant. *See* 18 U.S.C. § 3142(g).

Evidentiary rules do not apply at detention hearings and the Government is entitled to present evidence by way of proffer, among other means. *See* 18 U.S.C. § 3142(f)(2); *see also United States v. LaFontaine*, 210 F.3d 125, 130-31 (2d Cir. 2000).  This is because "bail hearings are 'typically informal affairs, not substitutes for trial or even for discovery.'" *LaFontaine*, 210 F.3d at 131 (quotation and other citation omitted).  Nevertheless, the Second Circuit "has also recognized that while the informality of bail hearings serves the demands of speed, the magistrate or district judge must also ensure the reliability of the evidence, 'by selectively insisting upon the production of the underlying evidence or evidentiary sources where their accuracy is in question.'" *Id.* (quotation and other citation omitted).

**B. Application**

In the present matter, the Court finds that the factors weigh in favor of Defendant's detention.

### 1. *Nature and Circumstances of the Offense*

Under 18 U.S.C. § 3142(g)(1), courts are to consider "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." The charges in the indictment do not qualify as any such offense. *See* Dkt. No. 1.

In considering the nature and circumstances of the offense, the Government emphasizes Defendant's risk of flight because he "is charged with helping aliens enter the country without a passport." Dkt. No. 24 at 16. The Government contends "[D]efendant can leave the country as easily — indeed, likely far more easily — as the aliens he, and the unindicted family member, assisted in entering it." *Id.*

Defendant is alleged to have brought or attempted to bring eight undocumented individuals into the United States. *See* Dkt. No. 1. The Government does not allege that any of them were minors. The Government does not allege that any of the individuals were placed in harms way during their alleged transport across the border. *See United States v. Abrego*, 787 F. Supp. 3d 830, 862 (M.D. Tenn. 2025) (finding this factor to weigh in favor of release where "human smuggling is, by ICE's own description, a transportation-based offense" despite one cooperating witness testifying before the grand jury and others giving statements to a law enforcement agent who testified under oath about the defendant's role in the scheme).

Therefore, this factor weighs in favor of release.

*2. Weight of the Evidence*

The weight of the evidence also favors detention. "'In assessing the weight of the evidence against a defendant, it is important to note that the defendant is presumed innocent, and it is not the Court's role at this stage of the proceedings to assess [the defendant's] guilt or innocence.'" *United States v. Dai*, No. 3:23-CR-478, 2023 WL 11016392, *7 (N.D.N.Y. Dec. 19, 2023), *aff'd*, 99 F.4th 136 (2d Cir. 2024) (quoting *United States v. Mendez*, No. 19-CR-245, 2020 WL 3263446, *4 (W.D.N.Y. June 17, 2020)) (cleaned up) (additional citation and quotation marks omitted); *see also United States v. Epstein*, 425 F. Supp. 3d 306, 321 (S.D.N.Y. 2019)).

The Government proffered evidence demonstrating that, after three separate stops of vehicles near the Canada border which were transporting individuals who are not citizens of the United States, Defendant was identified as an individual involved in coordinating the transports. *See* Dkt. No. 24 at 7-8. The Government has provided the Court with the law enforcement reports related to the arrests and interviews of the drivers and the photo arrays in which the three drivers identified Defendant as the individual involved in the scheme.

Defendant argues that although there is a mandatory minimum incarcerative sentence of five years for a conviction under 8 U.S.C. § 1324(a)(2)(b) for alien smuggling, "[t]here is no proof before the [C]ourt of [D]efendant's role and whatever that role is, he was not the defendant who brought 8 illegal immigrants on August 29, 2024. All those 3 drivers were located and were not the [D]efendant." Dkt. No. 25 at 7. Defendant also notes that the conspiracy charged in Count One of the Indictment does not have a mandatory minimum sentence. *See id.*

Defendant's argument ignores two key issues: one legal and one factual. Legally, as the Government explains in its reply, "one is liable for a co-conspirator's substantive offenses [] 'if commission of that offense was a reasonably foreseeable consequence of the conspiratorial agreement.'" *United States v. Guldi*, 141 F.4th 435, 447 (2d Cir. 2025) (quoting *Gomez v. United States*, 87 F.4th 100, 109 (2d Cir. 2023)); *see* Dkt. No. 29 at 13. As explained, the Government has proffered evidence that, although Defendant was not driving a vehicle transporting undocumented individuals, he had a part in planning the transport. Therefore, as part of the Court's discussion of Defendant's history and characteristics, the Court will consider the impact of a five-year mandatory minimum sentence.

On the factual issue, Defendant argued there is no proof as to what his role was in the alleged scheme in which he was not a driver. *See* Dkt. No. 25 at 7. However, this fails to rebut the evidence that the three drivers identified Defendant in photo array lineups, and the Government has proffered text messages and reports from conversations with the drivers explaining Defendant's involvement.

This factor weighs in favor of detention.

### 3. Defendant's History and Characteristics

Defendant's history and characteristics also weigh in favor of detention.

Among other things, this factor asks the Court to consider "the person's character, physical and mental condition, family ties, employment, . . . past conduct, history relating to drug or alcohol abuse, [and] criminal history." 18 U.S.C. § 3142(g)(3). "'Pertinent factors [also] include: a severe sentence; an extensive criminal history; a lack of community ties; hidden assets; and the

14

use of false names.'" *Terrance*, 2025 WL 782340, at *7 (quoting *United States v. Vasconcellos*, 519 F. Supp. 2d 311, 317 (N.D.N.Y. 2007)).

Both parties agree that Defendant does not have a criminal history. *See* Dkt. Nos. 24, 25. He also has community ties in that his mother, father, brother, and sister live in New York. *See* Dkt. No. 9 at 2. He does not appear to have any mental or physical condition impacting his ability to follow release conditions, and he has been working as an uber driver for a little more than two and a half years. *See id.* at 2-3.

However, as to the severity of the potential sentence, the Government notes, and this Court agrees that Defendant faces a five-year mandatory minimum sentence. *See* Dkt. No. 24 at 15. The Government is correct that this Court "has noted that a 5-year mandatory minimum sentence may be a basis to detain a defendant." *Id.* (citing *Blanco*, 570 Fed. Appx. at 77; *Terrance*, 2025 WL 782340, at *7).

Specifically, this Court has stated that "[c]ourts have ordered detention of a defendant on the ground of serious risk of flight where the defendant faced a sentence of approximately five years and the potential sentence was considered in conjunction with other factors." *Terrance*, 2025 WL 782340, at *7 (collecting cases). This Court also noted that "[a] three-year mandatory minimum is considerably less than other sentences that have created a potential motive to flee." *Id.* (citing *United States v. El-Hage*, 213 F.3d 74, 80 (2d Cir. 2000) (considering that the defendant was potentially facing life imprisonment); *United States v. Zhang*, 55 F.4th 141, 145, 151 (2d Cir. 2022) (same); *United States v. Curtis*, No. 18-CR-373, 2020 WL 1922745, *1

(S.D.N.Y. Apr. 21, 2020) ("[T]he Court concludes that Curtis would pose a flight risk if released. Curtis has a significant motive to flee.  He is facing a minimum sentence of 10 years")).

Because of Defendant's lack of criminal history, it does not appear he has ever faced a mandatory prison term, let alone five years.  It is plausible that facing such a sentence, while also fearing deportation, would increase one's likelihood of fleeing.

The Court is most deeply concerned by the same issue that concerned Magistrate Judge Cho: shortly after Defendant was contacted by law enforcement, Defendant booked a ticket to leave the country.  It appears true, as Defense counsel posits, that he did not know about the arrest warrant that had been issued by Magistrate Judge Favro regarding the federal charges.  It can also be true that Defendant has a sister who lives in Canada.  However, the circumstances of Defendant's arrest weigh in favor of detention.

There is much debate between the parties as to whether Defendant agreed to meet with the New York Police Officer.  Defense counsel produces text messages wherein the Officer asked Defendant to meet and call him, but Defendant did not respond. Dkt. No. 26-2 at 2.  Defense counsel argues, therefore, that Defendant did not agree to meet with the Officer.  However, the screenshots also show two one-minute phone calls between Defendant and the Officer. *See id.* at 3-4.  The Government states it has confirmed with the New York Police Officer that he and Defendant did agree to speak to again at a later date.  *See* Dkt. No. 29 at 8.  The Government has also produced to the Court the HSI Reports of Investigation, one of which states "Oberoi agreed to meet with Detectives." Sealed Exh.  The Court is hard pressed to believe that it is entirely coincidental that Defendant booked a last-minute flight to Canada after numerous people alleged

to have been working for him had been arrested and law enforcement was knocking on his door to discuss a car accident from two years ago.

Defense counsel states that during the 2023 car "accident, there were multiple people in the vehicle that struck the defendant's vehicle. One person began yelling out the window of their car at the defendant and alarmed the defendant." Dkt. No. 25 at 4. Counsel states that "[o]ne person began yelling out the window of their car at the defendant and alarmed the defendant. The defendant called 911 and the individuals fled the scene in their car." *Id.* Counsel contends that "[w]hen NYPD tried to reach [Defendant] 2 years later claiming, specifically, it was to talk about the 2-year-old accident, the defendant was fearful that the people from the accident would learn who he was and where he lived and would reach out and try to cause him harm." *Id.* at 5. Supposedly, Defendant "decided he did not want to further participate in any process on that accident because he had been reimbursed by his insurance company for the damage caused to his vehicle as a result of the accident." *Id.*

The Police Accident Report provided by Defendant states that "the female driver . . . stuck her head out of the veh[icle] and stated in substance that she didn't hit his car and fled the [scene.]" Dkt. No. 25-2 at 2. There is nothing in the Accident Report or any other document indicating Defendant's fear of the driver. It is also a bit puzzling to the Court why Defendant would have been seeking the advice of an attorney after law enforcement asked to speak about a car accident in which Defendant was the victim, and which had occurred two year before. Importantly, Defense counsel is the only individual who states such fear; Defendant has not submitted a sworn statement or any other writing to corroborate his attorney's representations.

Similarly, Defense counsel asserts that Defendant "has no resources available to him" that would give him the ability to flee. Dkt. No. 25 at 11. However, as the Government points out, Defendant's parents posted a $10,000 bond the *same* day that Magistrate Judge Stewart held the detention hearing. *See* Dkt. No. 19. Defendant and his father drive for Uber. *See* Dkt. No. 9 at 2. There is no indication as to whether Defendant's mother and brother work and contribute to the household. *See id.* The Pretrial Services Report indicates that Defendant's "entire salary goes to the household rent and utilities, the maintenance of the family's house in India, and his financial support of his wife." *Id.* Ten thousand dollars is generally no insignificant sum for a family in those circumstances to compile; however, Defendant's family raised it the same day the detention hearing was held. *See* Dkt. No. 19.

Finally, Defendant purchased a plane ticket at 3:30 P.M. for a flight that was leaving at 5:55 P.M. *See* Dkt. No. 24 at 9-10. Flights can be quite expensive and a weekend trip to see family generally involves some amount of planning. The last-minute nature of the flight creates doubt as to the efficacy of counsel's representation that Defendant was simply taking a trip to visit his sister. *See* Dkt. No. 25 at 9. The Court again notes that such representation has been made only by Defendant's attorney and not by Defendant himself. Likewise, Defense counsel's contention that Defendant's mother, father, and brother were inside the airport with Defendant "so he would not have to park his car and his family could use his car when he was gone," Dkt. 25 at 8, is unbelievable. It is far from plausible that three adult family members needed to come into the airport with Defendant in order to use Defendant's vehicle while he is on vacation.

The standard for demonstrating a flight risk is "the lesser standard of a preponderance of the evidence." *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001). The Court must ask itself if it is more likely than not that Defendant will flee. In the Court's estimation, Defendant already attempted to do so and this factor leans heavily in favor of Defendant's detention.

### *4. Nature and Seriousness of the Danger Posed by Defendant's Release*

This factor also weighs in favor of release. First, the Government does not address this factor in its motion for reply. *See* Dkt. Nos. 24, 29. Second, besides the allegation that Defendant developed or aided a scheme to bring individuals into this country who did not have permission to enter and whose own backgrounds are unknown, there is nothing in the record to suggest that Defendant is a danger to the community. Therefore, this factor weighs in favor of his release.

### *5. Insufficiency of Conditions of Release*

The Government argues electronic monitoring and home confinement are insufficient to reasonably assure Defendant's return to Court because "[l]ocation monitoring can be disabled. The [D]efendant can cross into Canada without a passport — simply doing the reverse of what he is alleged to have helped others do. The [D]efendant's family cannot vouch for him, and no surety bond would influence their behavior." Dkt. No. 24 at 19.

As explained, the Court does not credit Defense counsel's contention that Defendant's mother, brother, and father accompanied him inside of the airport for a flight he booked with two-hours' notice solely "so that [Defendant] would not have to park his car and his family could use his car while he was gone." Dkt. No. 25 at 8. This contention is particularly concerning in light of the Government's proffer that one of Defendant's family members is an unindicted co-

19

conspirator. *See* Dkt. No. 24 at 19. Given the nature of the underlying allegations combined with Defendant's last-minute flight and the seeming support from his family in taking the flight, the Court is not encouraged that Defendant would abide by home confinement in his parent's care.

Based on the foregoing application of the 18 U.S.C. § 3142(g) factors, the Court grants the Government's motion to revoke and orders Defendant remanded pending resolution of this action.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that the Government's appeal (Dkt. No. 18) is **GRANTED**; and the Court further

**ORDERS** that the Government's motion to revoke Defendant's release (Dkt. No. 21) is **GRANTED**; and the Court further

**ORDERS** that Defendant is remanded to the custody of the United States Marshal pending resolution of this case; and the Court further

**ORDERS** that the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: February 10, 2026
       Albany, New York

_/s/ Mae A. D'Agostino_
Mae A. D'Agostino
U.S. District Judge